IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:16-cr-00436-JO |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNNY ELLERY SMITH, | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.

Defendant Johnny Ellery Smith, an enrolled member of the Confederated Tribes of Warm Springs, was indicted by a federal grand jury on two counts of fleeing or attempting to elude Warm Springs police officers on the Warm Springs Indian Reservation. Defendant moved to dismiss the indictment for lack of jurisdiction. ECF No. 12. After this court denied the motion to dismiss, ECF No. 21, Defendant pleaded guilty, reserving the right to appeal the denial of the motion to dismiss. On appeal, the Ninth Circuit affirmed, rejecting the jurisdictional arguments raised by Defendant. *United States v. Smith*, 925 F.3d 410 (9th Cir.) (*Smith*), *cert. denied*, ____ U.S. ___, 140 S. Ct. 407 (2019).

In July 2020, the U.S. Supreme Court issued *McGirt v. Oklahoma*, ___ U.S. ___, 140 S. Ct. 2452, holding that the State of Oklahoma lacked jurisdiction to prosecute Jimcy McGirt, an

enrolled member of the Seminole Nation, because his crimes occurred within the boundaries of the Creek Reservation. Defendant then filed this motion under 28 U.S.C. § 2255, contending that the Ninth Circuit's decision in *Smith* is irreconcilable with the reasoning of the Supreme Court's decision in *McGirt*. I deny Defendant's § 2255 motion because *McGirt* does not effectively overrule the Ninth Circuit's decision in *Smith*.

## BACKGROUND

In September and October 2016, Defendant led Warm Springs police officers on two high-speed vehicle chases at night. Presentence Report (PSR) ¶¶ 7-14, ECF No. 84. Defendant was charged with two counts of fleeing or attempting to elude a police officer in violation of Or. Rev. Stat. § 811.540(1).

After his jurisdictional challenge failed, Defendant pleaded guilty. On November 30, 2017, Judge Brown sentenced Defendant to 19 months and one day in prison, followed by three years of supervised release. ECF Nos. 34, 35. The Ninth Circuit affirmed the conviction in May 2019.

## LEGAL STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner in custody on a sentence after conviction may move the court that imposed the sentence to vacate, set aside, or correct the sentence because

> the sentence was imposed in violation of the Constitution or laws of the United
> States, or . . . the court was without jurisdiction to impose such sentence, or . . .
> the sentence was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack . . . .

28 U.S.C. § 2255(a). To prevail on a motion under § 2255, a defendant must show that an error of constitutional magnitude occurred and that the error had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**DISCUSSION**

In *Smith*, the Ninth Circuit held that this court had jurisdiction over the charges against Defendant, based on the Assimilative Crimes Act, 18 U.S.C. § 13, and on the Indian Country Crimes Act, 18 U.S.C. § 1152. *Smith*, 925 F.3d at 412. Defendant now contends that the Supreme Court's decision in *McGirt* in effect overrules *Smith*. This presents a purely legal issue.

The Ninth Circuit has explained that when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). District courts apply the same "clearly irreconcilable" test when determining whether prior circuit authority has been overruled. *See United States v. Ramirez-Arroyo*, No. 3:08-cr-00228-MO, 2019 WL 1223309, at *1 (D. Or. Mar. 15, 2019). "The issues presented in the two cases need not be identical in order for the intervening higher authority to be controlling." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013). However, "'[i]t is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to 'cast doubt' on the prior circuit precedent.'" *United States v. Walker*, 953 F.3d 577, 580 (9th Cir. 2020) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (citations omitted)). "Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller*, 335 F.3d at 900.

**I. The Ninth Circuit's Decision in *Smith***

On appeal, Defendant made essentially the same jurisdictional arguments that he is making now, although of course without citing *McGirt*. The Ninth Circuit first addressed

Defendant's argument that the Assimilative Crimes Act (ACA) does not apply to Indian country.

925 F.3d at 414. The ACA provides in relevant part:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in [18 U.S.C. § 7] . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). The Ninth Circuit acknowledged that the ACA "lacks any express reference to Indians or Indian country." 925 F.3d at 415. The Ninth Circuit looked to the ACA's reference to 18 U.S.C. § 7, which defines areas within the "special maritime and territorial jurisdiction of the United States," "which are often referred to as 'federal enclaves.'" 925 F.3d at 415 (citing *United States v. Markiewicz*, 978 F.2d 786, 797 (2d Cir. 1992)). The Ninth Circuit explained, "If an offense is committed in a federal enclave *and* there is no federal statute defining that offense (i.e., an offense 'not made punishable by any enactment of Congress'), the federal government may nonetheless prosecute the offense through the ACA by assimilating a 'like offense' and 'like punishment' from the law of the state in which the federal enclave is situated." 925 F.3d at 415.

The *Smith* court then addressed whether "the Warm Springs Indian Reservation where Smith's offenses occurred . . . qualifies as one of these 'places . . . reserved or acquired as provided in [18 U.S.C. § 7].'" 925 F.3d at 415 (quoting 18 U.S.C. § 13(a)). The court noted that despite the ACA's failure to refer specifically to Indian country or Indian reservations, 18 U.S.C. § 7(3) "defines federal territorial jurisdiction to include '[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof.'" The court held that land may be considered

"reserved or acquired for the use of the United States" under 18 U.S.C. § 7(3) even if the United States is not the owner or occupant of the land "'so long as the land has been set aside for the use of an instrumentality of the federal government.'" 925 F.3d at 416 (quoting *United States v. Corey*, 232 F.3d 1166, 1177 (9th Cir. 2000)). The *Smith* court concluded that land set aside by the federal government for Indian reservations therefore qualifies as land "reserved or acquired for the use of the United States."

The *Smith* court then addressed whether Indian country falls "under the exclusive or concurrent jurisdiction" of the United States. Reasoning that the phrase "under the exclusive or concurrent jurisdiction" refers to the government's "authority to legislate with regard to Indian territories and the activities within," the court concluded that the United States does have jurisdiction over Indian county. 925 F.3d at 417. The court noted that when Congress revised the federal criminal code in 1948, "it also codified the definition of Indian country as 'all land within the limits of any Indian reservation *under the jurisdiction of the United States Government*.'" 925 F.3d at 417 (quoting 18 U.S.C. § 1151(a) (emphasis added by *Smith*)). The court concluded the ACA applies to Indian country. 925 F.3d at 418.

The *Smith* court then analyzed the application of the Indian Country Crimes Act (ICCA), which provides that "the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to Indian country." 18 U.S.C. § 1152. The ICCA contains three exceptions:

> This section shall not extend [1] to offenses committed by one Indian against the person or property of another Indian, [2] nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, [3] or to any case where, by treaty stipulations,

the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

18 U.S.C. § 1152 (numbering added).  The *Smith* court concluded that the ACA "when invoked in Indian country, is subject to the exceptions set for in the ICCA." 925 F.3d at 419.  The court then found that none of the ICCA's three exceptions to federal jurisdiction applied to Defendant's offenses, so this court properly exercised jurisdiction under the ACA.  925 F.3d at 421.

The concurrence in *Smith* disagreed with the majority on one issue, whether the ACA applies to Indian country independently of the ICCA.  The concurring judge reasoned that "the ACA applies to Indian country only through the ICCA, not on its own terms" because the ACA is included in the ICCA's reference to "the general laws of the United States." 925 F.3d at 423 (Fisher, J., concurring).  This difference in reasoning has no bearing on the *Smith* court's ultimate conclusion that the ACA applies to Indian country, subject to the ICCA's three exceptions.

Finally, the *Smith* court rejected the Defendant's argument that the Major Crimes Act (MCA), 18 U.S.C. § 1153, occupies the field of federal court jurisdiction over violations of state law occurring in Indian country, thereby precluding federal jurisdiction over Defendant's crimes.  The MCA, which was enacted after the ICCA, grants federal jurisdiction over fourteen specific serious crimes committed by Indians "against the person or property of another Indian or other person" in Indian country.  18 U.S.C. § 1153(a).  Congress passed the MCA in direct response to a Supreme Court decision holding that a federal court lacked jurisdiction to try an Indian for the murder of another Indian in Indian country.

925 F.3d at 422 (citing *Ex parte Crow Dog*, 109 U.S. 556 (1883)).  The Ninth

Circuit reasoned that

> rather than limit federal authority over crimes by Indians in Indian
> country, the MCA extended it to specific 'major crimes,' thereby
> partially withdrawing the exclusive authority of tribes over Indian-
> on-Indian crimes previously afforded by the ICCA.  The MCA did
> not otherwise affect the federal criminal jurisdiction that was
> already established by the ICCA for violations of the ACA and
> other federal enclave laws in Indian country.

925 F.3d at 422.  The court concluded that under the ACA and the ICCA, this

court had jurisdiction to try Defendant for attempting to elude.

## II. The Supreme Court's Decision in *McGirt v. Oklahoma*

Defendant bases his motion solely on his contention that the *Smith*

decision is clearly irreconcilable with the Supreme Court's subsequent decision in

*McGirt v. Oklahoma* in two ways:  in holding that the Warm Springs reservation

qualified as lands reserved or acquired for use of the United States, and in holding

that the ICCA applies to the Warm Springs reservation.  I conclude that *McGirt*

does not conflict with *Smith*.

McGirt, an enrolled member of the Seminole Nation of Oklahoma, was

convicted in an Oklahoma state court of sexual assault.  The issue before the

Supreme Court was whether McGirt committed his crimes in Indian country,

depriving Oklahoma state courts of jurisdiction.  The Supreme Court concluded

that McGirt's crimes occurred within the boundaries of the reservation Congress

had established for the Creek Indians, and that Congress had never dissolved the

Creek Tribe or diminished the boundaries of the reservation, which now include

most of the city of Tulsa.  140 S. Ct. at 2460.  The Supreme Court held that only

Congress, not the states or the federal judiciary, has the power to terminate or reduce an Indian reservation. 140 S. Ct. at 2462. The Court acknowledged that since establishing the Creek Reservation, Congress has "broken more than a few of its promises to the Tribe," including allowing the land allotted to the Tribe to be "fractured into pieces." 140 S. Ct. at 2462. However, because Congress had never enacted legislation to diminish the Creek Reservation, the land remained Indian country, and Oklahoma had no jurisdiction to prosecute McGirt for his offenses. The federal government had jurisdiction to do so under the Major Crimes Act. 140 S. Ct. at 2478.[1]

## III. Defendant's Arguments

Defendant contends that the *McGirt* decision changed Indian country jurisprudence by focusing more on the statutory text to determine "whether Congress's words broke a treaty promise." Def.'s Reply 2 (citing *Oneida Nation v. Village of Hobart*, 568 F.3d 664, 668 (7th Cir. 2020)), ECF No. 85. *Oneida Nation*, however, says nothing about federal criminal jurisdiction under the ACA or the ICCA, but rather addresses whether a municipal government could require the Oneida Nation to pay a permit fee for a tribal festival.

*McGirt* focused on whether Congress expressly acted to reduce or eliminate the Creek Reservation. The Court did not question whether federal jurisdiction existed under the MCA, and there was no reason for the Court to

---

[1] The government states that after the Court's decision setting aside McGirt's Oklahoma convictions, McGirt was convicted in federal court for aggravated sexual abuse and abusive sexual contact, apparently based on the same conduct that led to his convictions in state court. Gov't Resp. 7 & n.2, ECF No. 84.

address the ICCA. Nothing in *McGirt* casts doubt on the ICCA's validity or its application to Indian country.

Defendant contends that *McGirt* in effect "holds the government to promises to Indian tribes absent express Congressional revocation of the promises." Def.'s Reply 9. However, although the ICCA may, like the MCA, be a breach of government promises to give tribes complete sovereignty over their members, Congress has expressly authorized federal jurisdiction over certain crimes committed by Indians in Indian country.

Defendant also argues that although the ICCA and MCA do mention Indian country, the ACA does not. However, both the majority and the concurring opinions in *Smith* addressed the ACA's failure to mention Indian country. The majority opinion in *Smith* concluded that the wording of the ACA itself, considered with relevant caselaw, supports the ACA's application to Indian country. 925 F.3d at 418-21. In contrast, the concurring opinion concluded that the ACA applied to Indian country only through the ICCA's incorporation of "'the general laws of the United States,'" but "not on [the ACA's] own terms." *See Smith*, 925 F.3d at 423 (Fisher, J., concurring) (quoting ICCA, 18 U.S.C. § 1152). Regardless of which theory for applying the ACA to Indian country is correct, I conclude that the Ninth Circuit's decision in *Smith* remains good law after *McGirt*. Because Defendant's motion raises only legal issues, no evidentiary hearing is needed.

///

///

**CONCLUSION**

Defendant's Motion to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. §

2255, ECF No. 78, is DENIED.  Defendant is issued a certificate of appealability because he

"has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2),

as to the jurisdictional issue.

IT IS SO ORDERED.

DATED January 13, 2021.

_____
Robert E. Jones
United States District Judge